| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:18-CR-256 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| DOUGLAS HAIG, | |
| Defendant(s). | |

Presently before the court is defendant Douglas Haig's motion *in limine*. (ECF No. 40). Plaintiff United States of America ("the government") filed a response (ECF No. 42), to which Haig replied (ECF No. 44).

**I.     Facts**

This action arises from the investigation into the October 1, 2017, mass shooting, where Stephen Paddock opened fire on a crowd of over twenty-two thousand (22,000) concertgoers at the Route 91 Harvest music festival on 3901 South Las Vegas Boulevard, Las Vegas, Nevada. (ECF No. 1).

On the evening of October 1, 2017, Paddock positioned himself in rooms 134 and 135 on the 32nd floor of the Mandalay Bay Resort and Casino, which were in an elevated position overlooking the concert venue. *Id*. Paddock brought with him a remarkable arsenal including over twenty (20) firearms, hundreds of rounds of ammunition (most of it in preloaded high-capacity magazines), and range finding devices. *Id*. At approximately 10:05 p.m., Paddock used these

James C. Mahan
U.S. District Judge

weapons to attack the concertgoers from his hotel rooms, killing fifty-eight (58) and injuring eight hundred and sixty-nine (869) people.[1]

After obtaining and executing search warrants on Paddock's hotel rooms, law enforcement officials found Paddock's body, the weapons, and hundreds of rounds of spent ammunition. *Id*. The officers and agents also found an Amazon.com cardboard shipping box in the hotel rooms, marked with the name Douglas Haig and the address 4323 East Encanto Street, Mesa, Arizona. *Id*.

On October 2, 2017, and October 5, 2017, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents and Federal Bureau of Investigation ("FBI") agents arranged interviews with Douglas Haig and his business partner (hereinafter "Associate"). *Id*. Haig and Associate admitted that they had interacted with Paddock on multiple occasions. *Id*. Their first interaction with Paddock was on or about August 27, 2017, at a gun show in Las Vegas Nevada. *Id*. Paddock browsed the ammunition samples at their booth and purchased forty to fifty (40-50) rounds of .308 caliber incendiary ammunition. *Id*.

Haig and Associate's second interaction with Paddock was in early September 2017 at a gun show in Phoenix, Arizona. *Id*. Haig stated that Paddock attempted to purchase bulk ammunition and that they exchanged telephone numbers to coordinate a future transaction. *Id*.

Haig further stated that on September 19, 2017, he spoke with Paddock on the telephone and arranged to complete an ammunition purchase that day. *Id*. Paddock arrived at Haig's residence and purchased six hundred (600) rounds of .308 caliber (7.62mm) tracer ammunition as well as one hundred and twenty (120) rounds of M196 .223 caliber tracer ammunition. *Id*. According to Haig, he put the rounds in the Amazon.com shipping box, which law enforcement officials found in Paddock's hotel rooms. *Id*. Haig noted that Paddock purchased the munitions with cash and took the time to put on gloves prior to taking the box and placing it into the trunk of his vehicle. *Id*.

---

[1] LVMPD Criminal Investigative Report of the 1 October Mass Casualty Shooting, LVMPD Event No: 171001-3519.

1     The ATF and FBI agents asked Haig whether he manufactured the ammunition that he sold

2   to Paddock.  (ECF No. 42).  Haig repeatedly claimed that Lake City Army Ammunition Plant

3   manufactured the ammunition that he sold.  *Id*.  Haig also stated that he manufactures ammunition

4   only for his personal use.  *Id*

5        During these interviews, the agents observed reloading equipment in Haig's shop, which

6   was in the backyard of his residence located at 4323 East Encanto Street, Mesa, Arizona.  (ECF

7   No. 1).  Haig voluntarily provided the agents with a sample of ammunitions that he sells to

8   customers and claimed that the ammunition from the Las Vegas crime scene would not have his

9   tool marks.  *Id*.

10        FBI investigators subsequently forwarded evidence from the Las Vegas crime scene to a

11  laboratory for forensic analysis.  *Id*.  The examination revealed that: (1) two rounds of unfired .308

12  caliber cartridges from Paddock's hotel rooms had Haig's fingerprints; (2) the cartridges had

13  reloading equipment tool marks; and (3) the cartridges contained armor piercing/incendiary

14  bullets.  *Id*.

15        On October 19, 2017, the FBI obtained and executed a search warrant at Haig's residence.

16  *Id*.  Law enforcement officials seized over one hundred (100) items, including live ammunition,

17  reloading equipment, and ammunition sales records.  *Id*.  Laboratory analysis confirmed that the

18  ammunition from Haig's residence was reloaded armor piercing ammunition and contained tool

19  marks consistent with the marks on the reloaded armor piercing rounds from Paddock's hotel

20  rooms.  *Id*.  Haig does not have a license to manufacture armor piercing ammunition.  *Id*.

21        Analysis of the sales records revealed that Haig had engaged in over one hundred (100)

22  sales of armor piercing ammunition throughout the country.  *Id*.  Three of these sales were with

23  customers residing in the state of Nevada.  *Id*.  Law enforcement officials interviewed these

24  customers and discovered that two of the sales occurred in person at the Cashman Center in Las

25  Vegas, Nevada.  *Id*.  The third sale was an online transaction and the ammunition was shipped to

26  a residence in Elko, Nevada.  *Id*.

27

28

**James C. Mahan**
**U.S. District Judge**

On August 22, 2018, a grand jury in the District of Nevada returned an indictment charging Haig with one count of engaging in the business of manufacturing ammunition without a license in violation of 18 U.S.C. §§ 922(a)(1)(B) and 924(a)(1)(D). (ECF No 10).

Throughout the investigation and the pending criminal proceeding, there has been considerable publicity regarding Haig's involvement in the October 1, 2017, shooting. On multiple occasions Haig made various representations in the media regarding his business, Specialized Military Ammunition ("SMA"), which is an Arizona limited liability company. (ECF No. 42). Among these representations, Haig made statements regarding his awareness of laws governing the sale of ammunition and that he runs SMA as a "strong hobby" rather than a business. *Id.*

Now, Haig moves to exclude evidence connecting him to the October 1, 2017, shooting, including Eric Smith, Monte Swank, Jacqueline Slebrch, Michelle Reznicek, and Peter Petersen's (collectively the "experts") expert testimony. (ECF No. 40).

**II.     Legal Standard**

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test

1    and we will uphold its decision absent clear abuse of discretion."). "[I]n limine rulings are not

2    binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler*

3    *v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine*

4    rulings are always subject to change, especially if the evidence unfolds in an unanticipated

5    manner).

6         "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by

7    the motion will be admitted at trial. Denial merely means that without the context of trial, the

8    court is unable to determine whether the evidence in question should be excluded." *Conboy v.*

9    *Wynn Las Vegas, LLC*, No. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. Apr. 18,

10   2013).

11   **III.    Discussion**

12        Haig requests that the court exclude evidence connecting him to the October 1, 2017,

13   shooting, including expert testimony about his fingerprints and tool marks on the unfired cartridges

14   that law enforcement officials recovered from Paddock's hotel rooms. (ECF No. 40). Haig

15   contends that the evidence connecting him to the shooting and the experts' testimony is

16   inadmissible under Federal Rules of Evidence 401 and 403. *Id.*

17        *a.    The evidence at issue is relevant*

18        Under Rule 401, evidence is relevant if "(a) it has a tendency to make a fact of consequence

19   more or less probable than it would be without the evidence; and (b) the fact is of consequence in

20   determining the action." Fed. R. Evid. 401. Any evidence that is not relevant under Rule 401 is

21   inadmissible. *Id.* at 402.

22        The government brings forth a single charge for engaging in the business of manufacturing

23   ammunition without a license. (ECF No. 1). To prevail at trial, the government must prove beyond

24   a reasonable doubt that Haig willfully engaged in the business of manufacturing firearms without

25   a license. 18 U.S.C. §§ 922(a)(1)(B), 924(a)(1)(D).

26        In determining whether a defendant is engaged in the business of manufacturing firearms,

27   "the finder of fact must examine the intent of the actor and all circumstances surrounding the acts

28   alleged to constitute engaging in business." *United States v. Palmieri*, 21 F.3d 1265, 1268 (3rd

Cir. 1994), *reversed and remanded on unrelated grounds*, 5113 U.S. 957 (1994). The statutory definition of "engaged in the business" does not include the "occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, . . ." 18 U.S.C. § 921(a)(21)(C).

The government intends to introduce evidence regarding Haig's transactions with Paddock to prove that Haig was engaged in a business rather than a hobby. (ECF No. 42). The repeat sales in multiple locations, including a gun show and a private residence, as well as the large quantity of ammunition sold are circumstances showing that Haig was engaged in a business. Thus, evidence of Haig's transactions with Paddock is relevant.

The government also intends to introduce expert testimony about forensic evidence showing that Haig manufactured the ammunition that law enforcement officials recovered in Paddock's hotel rooms. *See* (ECF No. 42). Such testimony directly supports the government's charge because it makes it more probable that Haig manufactured and sold ammunition. Thus, the experts' testimonies are also relevant.

Lastly, in light of Haig's pre-trial motion in which he challenged venue, there is a substantial likelihood that Haig will challenge venue again at trial. *See* (ECF No. 18). Thus, evidence pertaining to Haig's sale of ammunition to Paddock is relevant because venue is "a question of fact that the government must prove by a preponderance of the evidence." *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012); *see also United States v. Casch*, 448 F.3d 1115, 1117 (9th Cir. 2006) ("In a jury trial, it is not for the court to determine that venue exists . . . ).

*b. Rule 403 concerns do not substantially outweigh probative value*

When evidence is relevant, it may still be excluded when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**James C. Mahan**
**U.S. District Judge**

- 6 -

1    Haig argues that evidence connecting him to the October 1, 2017, shooting is inadmissible

2    as it risks (1) unfair prejudice, (2) confusing the issues, (3) misleading the jury, and (4) needlessly

3    presenting cumulative evidence. (ECF No. 40). The court disagrees.

4           *i.   Unfair prejudice*

5           Unfair prejudice "appeals to the jury's sympathies, arouses its sense of horror, provokes its

6    instinct to punish, or otherwise may cause a jury to base its decision on something other than the

7    established propositions in the case." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir.

8    1990).

9           The court recognizes that the October 1, 2017, shooting was a widely publicized event that

10   stirs the emotions of many individuals. However, Rule 403 does not mandate the exclusion of

11   evidence due to the mere existence of unfair prejudice. Rather, unfair prejudice must *substantially*

12   outweigh probative value, and the evidence at issue does not meet this exacting standard.

13          The government seeks to present evidence at trial that is uniquely probative as it includes

14   forensic data of tool marks definitively showing that Haig manufactured the reloaded ammunition

15   in Paddock's hotel rooms with the reloading equipment located at his residence. *See* (ECF No.

16   42). Moreover, Haig's fingerprints show to a high degree of certainty that Haig was once in

17   possession of the reloaded ammunition, which confirms that Haig was selling ammunition that he

18   manufactured. *See* (ECF No. 42).

19          The government also seeks to present evidence at trial regarding Haig's interviews during

20   the government's investigation into the October 1, 2017, shooting and Haig's public statements in

21   the media. (ECF No. 42). This evidence, which largely consists of Haig allegedly lying about

22   selling ammunition that he manufactures and Haig implying that he has a general understanding

23   of the laws governing the sale of firearms, is compelling circumstantial evidence showing that

24   Haig knew it was illegal to sell without a license ammunition that he manufactured. *See United*

25   *States v. Hernandez*, 859 F.3d 817, 824 (9th Cir. 2017) (holding that the government must often

26   rely on circumstantial evidence to show willful conduct).

27

28

**James C. Mahan**
**U.S. District Judge**

In light of the foregoing, the government has shown that the strongest evidence of Haig's culpability arises from the October 1, 2017, shooting. Thus, to grant Haig's motion *in limine* would be nothing less than to exclude the heart of the government's case.

The court also emphasizes that procedural safeguards, such as jury instructions, will help minimize the risk of prejudice. *See United States v. Norris*, 423 F. App'x 732, 734 (9th Cir. 2011) (". . . we must presume that juries will follow the district court's limiting instructions."). Moreover, the government has agreed not to present remarkably prejudicial evidence of the October 1, 2017, shooting. Thus, the court will exclude evidence that pertains to the following matters:

> (1) Evidence related to the injury of victims or the Route 91 concert venue crime scene.
> (2) Photographs or videos of paddock.
> (3) Photographs or descriptions of Paddock's hotel rooms that do not relate to the recovery of ammunition.
> (4) Photographs or descriptions of Paddock's firearms that are not connected to Haig's sale of ammunition.
> (5) Portions of Haig's media statements that do not relate to his sale of ammunition or his transactions with Paddock.
> (6) Portions of Haig's statements that relate to the October 1, 2017, shooting casualties or that otherwise do not relate details of his sale of ammunition.

*See* (ECF No. 42) (the government does not intend to present evidence on the matters listed above).

Accordingly, because the evidence at issue is uniquely probative and the government will not be able to present the most prejudicial evidence pertaining to the October 1, 2017, shooting, unfair prejudice does not substantially outweigh probative value.

*ii. Remaining Rule 403 concerns*

Haig argues that testimony from five expert witnesses regarding unfired cartridges from Paddock's hotel rooms would confuse the issue and mislead the jury. (ECF No. 40). The court disagrees.

Although the government will present evidence connecting Haig to the October 1, 2017, shooting, the government will not include evidence that is not relevant to Haig's manufacture and sale of ammunitions. Further, the court will provide jury instructions that clearly identify the issues that the jury must resolve. *See Norris*, 423 F. App'x at 734. With these precautions, the court

does not see any genuine danger that the experts' testimonies would confuse the issues or mislead the jury.

Haig also requests that the court exclude the testimony of many individuals that purchased ammunition from Haig as the presentation of such testimony would be needlessly cumulative. (ECF No. 40).

The parties have not sufficiently disclosed the relevant witnesses for the court to determine if their testimony would be needlessly cumulative. Accordingly, the court will not exclude the witnesses' testimony subject to Haig's ability to renew his objection at the appropriate time.

*c.  Summary*

The court will not exclude evidence connecting Haig to the October 1, 2017, shooting. However, in order to diminish the risk of prejudice, the court will not permit the government to present evidence that is not related to Haig's sale of ammunition or Haig's transactions with Paddock, as listed in subsection (b)(i).

**VI.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Haig's motion *in limine* (ECF No. 40) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

DATED February 5, 2019.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**