UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:18-CR-256 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| DOUGLAS HAIG, | |
| Defendant(s). | |

Presently before the court is Magistrate Judge Cam Ferenbach's report and recommendation. (ECF No. 61). Defendant Douglas Haig filed an objection (ECF No. 62) and plaintiff United States of America ("the government") filed a response (ECF No. 63).

Also before the court is Haig's motion to dismiss. (ECF No. 45). The government filed a response (ECF No. 51), to which Haig replied (ECF No. 57).

**I.  Facts**

This action arises from the investigation into the October 1, 2017, mass shooting, where Stephen Paddock opened fire on a crowd of over twenty-two thousand (22,000) concertgoers at the Route 91 Harvest music festival on 3901 South Las Vegas Boulevard, Las Vegas, Nevada. (ECF No. 1).

On the evening of October 1, 2017, Paddock positioned himself in rooms 134 and 135 on the 32nd floor of the Mandalay Bay Resort and Casino, which were in an elevated position overlooking the concert venue. *Id.* Paddock brought with him a remarkable arsenal including over twenty (20) firearms, hundreds of rounds of ammunition (mostly in preloaded high-capacity magazines), and range finding devices. *Id.* At approximately 10:05 p.m., Paddock used these

**James C. Mahan**
**U.S. District Judge**

weapons to attack the concertgoers from his hotel rooms, killing fifty-eight (58) and injuring eight hundred and sixty-nine (869) people.[1]

After obtaining and executing search warrants on Paddock's hotel rooms, law enforcement officials found Paddock's body, the weapons, and hundreds of rounds of spent ammunition. *Id*. The officers and agents also found an Amazon.com cardboard shipping box in the hotel rooms, marked with the name Douglas Haig and the address 4323 East Encanto Street, Mesa, Arizona. *Id*.

On October 2, 2017, and October 5, 2017, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents and Federal Bureau of Investigation ("FBI") agents arranged interviews with Douglas Haig and his business partner (hereinafter "Associate"). *Id*. Haig and Associate admitted that they had interacted with Paddock on multiple occasions. *Id*. Their first interaction with Paddock was on or about August 27, 2017, at a gun show in Las Vegas Nevada. *Id*. Paddock browsed the ammunition samples at their booth and purchased forty to fifty (40-50) rounds of .308 caliber incendiary ammunition. *Id*.

Haig and Associate's second interaction with Paddock was in early September 2017 at a gun show in Phoenix, Arizona. *Id*. Haig stated that Paddock attempted to purchase bulk ammunition and that they exchanged telephone numbers to coordinate a future transaction. *Id*.

Haig further stated that on September 19, 2017, he spoke with Paddock on the telephone and arranged to complete an ammunition purchase that day. *Id*. Paddock arrived at Haig's residence and purchased six hundred (600) rounds of .308 caliber (7.62mm) tracer ammunition as well as one hundred and twenty (120) rounds of M196 .223 caliber tracer ammunition. *Id*. According to Haig, he put the rounds in the Amazon.com shipping box, which law enforcement officials found in Paddock's hotel rooms. *Id*. Haig noted that Paddock purchased the munitions with cash and took the time to put on gloves prior to placing the box into the trunk of his vehicle. *Id*.

---

[1] LVMPD Criminal Investigative Report of the 1 October Mass Casualty Shooting, LVMPD Event No: 171001-3519.

James C. Mahan
U.S. District Judge

The ATF and FBI agents asked Haig whether he manufactured the ammunition that he sold to Paddock. (ECF No. 42). Haig repeatedly claimed that Lake City Army Ammunition Plant manufactured the ammunition that he sold. *Id*. Haig also stated that he manufactures ammunition only for his personal use. *Id*

During these interviews, the agents observed reloading equipment in Haig's shop, which was in the backyard of his residence located at 4323 East Encanto Street, Mesa, Arizona. (ECF No. 1). Haig voluntarily provided the agents with a sample of ammunitions that he sells to customers and claimed that the ammunition from the Las Vegas crime scene would not have his tool marks. *Id*.

FBI investigators subsequently forwarded evidence from the Las Vegas crime scene to a laboratory for forensic analysis. *Id*. The examination revealed that: (1) two rounds of unfired .308 caliber cartridges from Paddock's hotel rooms had Haig's fingerprints; (2) the cartridges had reloading equipment tool marks; and (3) the cartridges contained armor piercing/incendiary bullets. *Id*.

On October 19, 2017, the FBI obtained and executed a search warrant at Haig's residence. *Id*. Law enforcement officials seized over one hundred (100) items, including live ammunition, reloading equipment, and ammunition sales records. *Id*. Laboratory analysis confirmed that the ammunition from Haig's residence was reloaded armor piercing ammunition and contained tool marks consistent with the marks on the reloaded armor piercing rounds from Paddock's hotel rooms. *Id*. Haig does not have a license to manufacture armor piercing ammunition. *Id*.

Analysis of the sales records revealed that Haig had engaged in over one hundred (100) sales of armor piercing ammunition throughout the country. *Id*. Three of these sales were with customers residing in the state of Nevada. *Id*. Law enforcement officials interviewed these customers and discovered that two of the sales occurred in person at the Cashman Center in Las Vegas, Nevada. *Id*. The third sale was an online transaction and the ammunition was shipped to a residence in Elko, Nevada. *Id*.

On August 22, 2018, a grand jury in the District of Nevada returned an indictment charging Haig with one count of engaging in the business of manufacturing ammunition without a license in violation of 18 U.S.C. §§ 922(a)(1)(B) and 924(a)(1)(D). (ECF No 10).

Throughout the investigation and the pending criminal proceeding, there has been considerable publicity regarding Haig's involvement to the October 1, 2017, shooting. On multiple occasions Haig made various representations in the media regarding his business, Specialized Military Ammunition ("SMA"), which is an Arizona limited liability company. (ECF No. 42). Among these representations, Haig made statements regarding his awareness of laws governing the sale of ammunition and that he runs SMA as a "strong hobby" rather than a business. *Id.*

Now, Haig moves to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(1) on the grounds that the charging statute, § 922(a)(1)(B), is unconstitutionally vague. (ECF No. 45). Magistrate Judge Ferenbach recommends denying Haig's motion. (ECF No. 61).

## II. Legal Standard

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made).

. . .

James C. Mahan
U.S. District Judge

**III. Discussion**

Haig has objected to Magistrate Judge Ferenbach's report and recommendation. (ECF No. 62). The court accordingly conducts a *de novo* review of Haig's motion to dismiss.

Federal Rule of Criminal Procedure 12(b) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A pretrial motion to dismiss is not the proper vehicle for a summary trial on the evidence. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). Rather, courts adjudicate Rule 12(b) motions only when they involve questions of law. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014). "If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (quotes and citation omitted). A district court can, however, make preliminary findings of fact necessary to decide questions of law when doing so does not resolve issues properly left to the fact-finder. *Id*

Haig's pretrial motion to dismiss includes both a facial challenge and an as-applied challenge to the constitutionality of 18 U.S.C. § 922(a)(1)(B). *See* (ECF No. 45). Haig specifically argues that the statute is unconstitutionally vague because it does not define "manufacturing," which is an essential term in the relevant statutory provision. *Id*. Both of Haig's constitutional challenges are questions of law that the court can adjudicate pursuant to Rule 12(b). *See United States v. Harris*, 705 F.3d 929, 932–34 (9th Cir. 2013);

*a. Facial challenge*

A statute is unconstitutionally vague on its face when it "'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless [sic] that it authorizes or encourages seriously discriminatory enforcement.'" *Harris*, 705 F.3d at 932 (citing *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009)). "Vagueness challenges to statutes which

do not involve First Amendment freedoms must be examined in the light of facts of the case at hand." *Id.* (brackets omitted) (citing *United States v. Mazurie*, 419 U.S. 544, 550 (1975)).

§ 922(a)(1)(B) implicates freedoms under the Second Amendment because it prohibits citizens from engaging in the business of importing or manufacturing, or in the course of such business, transporting ammunition without a license. 18 U.S.C. § 922(a)(1)(B); *Cf. United States v. Jimenez*, 895 F.3d 228, 232–36 (2nd Cir. 2018). Thus, because the court must address Haig's arguments in consideration of the facts in this case, Haig's facial challenge collapses into his as-applied challenge. *See, e.g.*, *United States v. Schaefer*, No. 3:17-cr-00400-HZ, 2019 WL 267711 at *7-8 (D. Or. Jan. 17, 2019) (converting a facial challenge into an as-applied challenge).

*b. As-applied challenge*

Haig argues that § 922(a)(1)(B) is unconstitutionally vague as-applied because the statute did not put him on notice that reloading cartridges with replacement parts constitutes "manufacturing ammunition." (ECF No. 45). The government contends that Haig's motion is improperly based on matter extrinsic to the indictment because he assumes that reloading cartridges is the only conduct of manufacturing ammunition that the government intends to prove. (ECF No. 63).

The indictment does not allege specific conduct in violation of § 922(a)(1)(B). *See* (ECF No. 10). However, because both parties agree that the government will present evidence of Haig reloading cartridges, the court holds that the government intends to prove that Haig violated § 922(a)(1)(B) by reloading ammunition.[2] *See Shortt Accountacy Corp.*, 785 F.2d at 1452 (allowing courts to make preliminary findings when adjudicating a Rule 12(b) motion). Therefore, the court will address Haig's as-applied challenge.

A statute is unconstitutionally vague under the Due Process Clause of the Fifth Amendment when "it 'fails to put a defendant on notice that his conduct was criminal.'" *Harris*, 705 F.3d at 932 (brackets omitted) (quoting *Kilbride*, 584 F.3d at 1257). Statutes that provide for criminal

---

[2] The court notes that this holding does not limit the government to proving that Haig violated § 922(a)(1)(B) solely by reloading ammunitions. If the government presents evidence at trial of other conduct which violates § 922(a)(1)(B), Haig will be able to file an appropriate motion and assert as-applied challenges.

sanctions have an "enhanced" requirement to identify unlawful conduct. *Id*. "However, even applying this heightened requirement, due process does not require impossible standards of clarity." *Kilbride*, 584 F.3d at 1257 (quotes and citation omitted).

§ 922(a)(1)(B) provides that it is unlawful for any person, "except a licensed importer or licensed manufacturer, to engage in the business of importing or manufacturing ammunition, or in the course of such business, to ship, transport, or receive ammunition in interstate or foreign commerce." 18 U.S.C. § 922(a)(1)(B). The Gun Control Act, which contains the relevant statutory scheme, does not define "manufacturing" or otherwise limit the meaning of the term. *See generally* 18 U.S.C. § 921.

When a statute does not define a term, courts interpret that term in its plain and ordinary meaning. *United States v. Iverson*, 162 F.3d 1015, 1022 (9th Cir. 1998). The Ninth Circuit has not provided the plain and ordinary meaning of "manufacturing." However, the Fourth Circuit held in *Broughman* that "manufacturing firearms" means assembling a firearm's individual components so as to render the firearm suitable for use. *Broughman v. Carver*, 624 F.3d 670, 675 (4th Cir. 2010). The Fourth Circuit also identified the following related words: assemble, build, construct, refashion, and remake. *Id*.

A review of popular dictionaries confirms that the Fourth Circuit provided the plain and ordinary meaning of "manufacturing." Merriam-Webser Dictionary defines the term as "to make into a product suitable for use" and Dictionary.com defines the term as "to make or produce by hand or machinery, especially on a large scale."[3] The court adopts these common definitions and holds that "manufacturing ammunition" under § 922(a)(1)(B) means assembling ammunitions' individual components so as to render the ammunition suitable for use.

Reloading ammunition involves using various mechanical devices to punch used primers out of cartridge cases, forge primer pockets, expand cartridge mouths so the cartridges can accept new projectiles, and crimping bullets into cartridges. *See* (ECF No. 51). These acts involve

---

[3] Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/manufacture (accessed May 7, 2019); Dictionary.com, *available at* https://www.dictionary.com/browse/manufacture?s=t (accessed May 7, 2019).

significant machining and assembling. Thus, reloading ammunition falls within the statutory category of "manufacturing ammunition."

Although a plain reading of § 922(a)(1)(B) adequately identifies what conduct constitutes manufacturing ammunition, the ATF has expressly announced on its website that a person who reloads ammunition in the course of business must have a license as a manufacturer under 18 U.S.C. § 922(a) and 27 CFR 478.41.[4] These public resources are sufficient to put Haig on notice whether his conduct was unlawful. Indeed, it appears Haig received actual notice as his LinkedIn profile states that he manufactures ammunition. (ECF No. 51-1).

Any residual allegations of vagueness in § 922(a)(1)(B) cannot amount to a constitutional violation because the statute criminalizes only willful conduct. 18 U.S.C. § 924(a)(1)(D). When a statute includes a *scienter* requirement, as is the case here, the law discourages arbitrary and discriminatory enforcement by limiting the discretion of law enforcement officials. *United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005). Such a statutory scheme weighs against holding that a statute is void. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Thus, the mental state requirement in § 922(a)(1)(B) ensures that the statute is not unconstitutionally vague.

## VI. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Magistrate Judge Ferenbach's report and recommendation (ECF No. 61) be, and the same hereby is, ADOPTED, consistent with the foregoing.

IT IS FURTHER ORDERED that Haig's motion to dismiss (ECF No. 45) be, and the same hereby is, DENIED.

DATED May 8, 2019.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Bureau of Alcohol, Tobacco, Firearms and Explosives, *available at* https://www.atf.gov/firearms/qa/person-who-reloads-ammunition-required-be-licensed-manufacturer (accessed May 7, 2019).