UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>DOUGLAS HAIG,<br><br>Defendant(s). | Case No. 2:18-CR-256 JCM (VCF)<br><br>AMENDED ORDER |

Presently before the court is plaintiff United States of America's ("the government") motion *in limine* to exclude arguments and evidence regarding the Second Amendment. (ECF No. 42). Defendant Douglas Haig filed a non-opposition response. (ECF No. 59).

Also before the court is the government's motion *in limine* to exclude arguments and evidence regarding prosecutorial charging decisions and allegations of selective prosecution. (ECF No. 53). Haig filed a non-opposition response. (ECF No. 60).

Also before the court is Haig's motion *in limine* to exclude evidence regarding armor piercing and tracer ammunition. (ECF No. 64). The government filed a response (ECF No. 75), to which Haig replied (ECF No. 77).

Also before the court is Haig's motion *in limine* to exclude Erich Smith's expert testimony regarding toolmark evidence. (ECF No. 80). The government filed a response (ECF No. 82), to which Haig replied (ECF No. 84).

**I.    Facts**

This action arises from the investigation into the October 1, 2017, mass shooting, where Stephen Paddock opened fire on a crowd of over 22,000 concertgoers at the Route 91 Harvest music festival on 3901 South Las Vegas Boulevard, Las Vegas, Nevada. (ECF No. 1).

**James C. Mahan**
**U.S. District Judge**

On the evening of October 1, 2017, Paddock positioned himself in rooms 134 and 135 on the 32nd floor of the Mandalay Bay Resort and Casino, which were in an elevated position overlooking the concert venue. *Id.* Paddock brought with him a remarkable arsenal including over twenty firearms, hundreds of rounds of ammunition (mostly in preloaded high-capacity magazines), and range finding devices. *Id.* At approximately 10:05 p.m., Paddock used these weapons to attack the concertgoers from his hotel rooms, killing fifty-eight and injuring 869 people.[1]

After obtaining and executing search warrants on Paddock's hotel rooms, law enforcement officials found Paddock's body, the weapons, and hundreds of rounds of spent ammunition. *Id.* The officers and agents also found an Amazon.com cardboard shipping box in the hotel rooms, marked with the name Douglas Haig and the address 4323 East Encanto Street, Mesa, Arizona. *Id.*

On October 2, 2017, and October 5, 2017, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents and Federal Bureau of Investigation ("FBI") agents arranged interviews with Douglas Haig and his business partner (hereinafter "Associate"). *Id.* Haig and Associate admitted that they had interacted with Paddock on multiple occasions. *Id.* Their first interaction with Paddock was on or about August 27, 2017, at a gun show in Las Vegas, Nevada. *Id.* Paddock browsed the ammunition samples at their booth and purchased forty to fifty rounds of .308 caliber incendiary ammunition. *Id.*

Haig and Associate's second interaction with Paddock was in early September 2017 at a gun show in Phoenix, Arizona. *Id.* Haig stated that Paddock attempted to purchase bulk ammunition and that they exchanged telephone numbers to coordinate a future transaction. *Id.*

Haig further stated that on September 19, 2017, he spoke with Paddock on the telephone and arranged to complete an ammunition purchase that day. *Id.* Paddock arrived at Haig's residence and purchased 600 rounds of .308 caliber (7.62mm) tracer ammunition as well as 120 rounds of M196 .223 caliber tracer ammunition. *Id.* According to Haig, he put the rounds in the

---

[1] LVMPD Criminal Investigative Report of the 1 October Mass Casualty Shooting, LVMPD Event No: 171001-3519.

James C. Mahan
U.S. District Judge

Amazon.com shipping box, which law enforcement officials found in Paddock's hotel rooms. *Id*. Haig noted that Paddock purchased the munitions with cash and took the time to put on gloves prior to placing the box into the trunk of his vehicle. *Id*.

The ATF and FBI agents asked Haig whether he manufactured the ammunition that he sold to Paddock. (ECF No. 42). Haig repeatedly claimed that Lake City Army Ammunition Plant manufactured the ammunition that he sold. *Id*. Haig also stated that he manufactures ammunition only for his personal use. *Id*

During these interviews, the agents observed reloading equipment in Haig's shop, which was in the backyard of his residence located at 4323 East Encanto Street, Mesa, Arizona. (ECF No. 1). Haig voluntarily provided the agents with a sample of ammunitions that he sells to customers and claimed that the ammunition from the Las Vegas crime scene would not have his toolmarks. *Id*.

FBI investigators subsequently forwarded evidence from the Las Vegas crime scene to a laboratory for forensic analysis. *Id*. The examination revealed that: (1) two rounds of unfired .308 caliber cartridges from Paddock's hotel rooms had Haig's fingerprints; (2) the cartridges had reloading equipment toolmarks; and (3) the cartridges contained armor piercing/incendiary bullets. *Id*.

On October 19, 2017, the FBI obtained and executed a search warrant at Haig's residence. *Id*. Law enforcement officials seized over 100 items, including live ammunition, reloading equipment, and ammunition sales records. *Id*. Laboratory analysis confirmed that the ammunition from Haig's residence was reloaded armor piercing ammunition and contained toolmarks consistent with the marks on the reloaded armor piercing rounds from Paddock's hotel rooms. *Id*. Haig does not have a license to manufacture armor piercing ammunition. *Id*.

Analysis of the sales records revealed that Haig had engaged in over 100 sales of armor piercing ammunition throughout the country. *Id*. Three of these sales were with customers residing in the state of Nevada. *Id*. Law enforcement officials interviewed these customers and discovered that two of the sales occurred in person at the Cashman Center in Las Vegas, Nevada.

**James C. Mahan**
**U.S. District Judge**

*Id*. The third sale was an online transaction and the ammunition was shipped to a residence in Elko, Nevada. *Id*.

On August 22, 2018, a grand jury in the District of Nevada returned an indictment charging Haig with one count of engaging in the business of manufacturing ammunition without a license in violation of 18 U.S.C. §§ 922(a)(1)(B) and 924(a)(1)(D). (ECF No 10).

Throughout the investigation and the pending criminal proceeding, there has been considerable publicity regarding Haig's involvement to the October 1, 2017, shooting. On multiple occasions Haig made various representations in the media regarding his business, Specialized Military Ammunition ("SMA"), which is an Arizona limited liability company. (ECF No. 42). Among these representations, Haig made statements regarding his awareness of laws governing the sale of ammunition and that he runs SMA as a "strong hobby" rather than a business. *Id*.

Now, the parties have filed four motions *in limine*. (ECF Nos. 52, 53, 64, 80).

## II. Legal Standard

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test

and we will uphold its decision absent clear abuse of discretion."). "[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

"Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. Apr. 18, 2013).

**III. Discussion**

The government requests that the court exclude all arguments and evidence pertaining to the constitutionality of 18 U.S.C. § 922(a)(1)(B) under the Second Amendment because (1) such issues are questions of law for the court and (2) mandatory authority from the Ninth Circuit indicates that offenses under § 922(a)(1) do not violate the Second Amendment. (ECF No. 52). The government also requests that the court exclude all arguments and evidence regarding prosecutorial charging decisions and allegations of selective prosecution as being (1) beyond the province of the trier-of-fact and (2) unnecessarily prejudicial, confusing, and misleading. (ECF No. 53). Because Haig does not oppose these requests, the court will grant the government's motions *in limine* (ECF Nos. 52, 53). *See* (ECF Nos. 59, 60).

Haig has filed two motions *in limine*. (ECF Nos. 64, 80). First, Haig requests that the court exclude evidence regarding armor piercing and tracer ammunition. (ECF No. 64). Second, Haig requests that the court exclude Smith's expert testimony regarding toolmark evidence. (ECF No. 80). The court addresses each in turn.

*a. Evidence regarding armor piercing and tracer ammunition*

Haig concedes that the court should allow the government to present evidence of his ammunition sales, but requests that the court exclude any evidence that would identify the

ammunition as armor piercing or tracer rounds. (ECF No. 64). Specifically, Haig argues that such evidence is inadmissible under Federal Rules of Evidence 401 and 403. *Id*. The court disagrees.

### *i. Relevance*

The type of ammunition Haig sold is relevant because, when taken in conjunction with other circumstantial evidence, it shows that Haig acted willfully.

Under Rule 401, evidence is relevant if "(a) it has a tendency to make a fact of consequence more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Any evidence that is not relevant under Rule 401 is inadmissible. Fed. R. Evid. 402.

The government brings forth a single charge for engaging in the business of manufacturing ammunition without a license. (ECF No. 10). To prevail at trial, the government must prove beyond a reasonable doubt that Haig willfully violated the respective statutory provision. 18 U.S.C. §§ 922(a)(1)(B), 924(a)(1)(D).

Haig used SMA to manufacture and sell military style ammunition including armor piercing and tracer rounds. *See* (ECF Nos. 64, 75). An appropriate license permits the manufacture and sale of such ammunition only for (1) the use of the United States, (2) purposes of exportation, or (3) purposes of experimentation that the attorney general has authorized. 18 U.S.C. §§ 922(a)(7)(A)–(C), 922(a)(8)(A)-(C). Haig did not manufacture and sell armor piercing and tracer ammunition for any of the purposes that §§ 922(a)(7) and 922(a)(8) provide. Instead, he manufactured and sold the ammunition for civilian use. *See* (ECF Nos. 64, 75). Thus, a license would not have authorized Haig's alleged business activities. Haig's failure to obtain a license under these circumstances shows that he understood the illicit nature of his alleged acts.

Further, a license permits the ATF to inspect manufacturing facilities and records. 27 C.F.R. §§ 478.121, 478.23(b). The place of manufacture in this case would have been Haig's personal residence, which contained significant evidence of his manufacture and sale of armor piercing and tracer ammunition. Thus, when Haig failed to get a license, he also prevented his residence from being exposed to inspection. This act of concealment indicates that Haig knew that he was illegally manufacturing ammunition.

The armor piercing and tracer ammunition is also relevant because Haig sold these rounds under the false pretenses that SMA was a defense contractor licensed to sell military style ammunition. *See* (ECF No. 75). Haig would not have made these alleged representations unless he knew about the stringent federal licensing requirements for manufacturing and selling ammunition. Moreover, Haig's former experience as a federal firearms dealer corroborates the government's contention that Haig was aware of the regulations that control armor piercing and tracer ammunition. *Id.*

In sum, Haig's manufacture of armor piercing and tracer ammunition is inextricably intertwined with other events relevant to the charge in the indictment. This circumstantial evidence, when taken collectively, allows the trier-of-fact to find that Haig willfully engaged in the business of manufacturing ammunition without a license. *See United States v. Hernandez*, 859 F.3d 817, 824 (9th Cir. 2017) (holding that the government must often rely on circumstantial evidence to show willful conduct).

### ii. Rule 403 concerns

When evidence is relevant, it may still be excluded when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The court first notes that the government intends to present many types of military grade ammunition including self-destroying thermite incendiary rounds. (ECF No. 75). Armor piercing and tracer rounds will not uniquely increase the risk of an emotional reaction because Haig does not seek to exclude the remaining military grade ammunition in this case. In addition, the court will use voir dire and jury instructions to ensure that the jury returns a verdict that is not a result of unfair prejudice. *See United States v. Norris*, 423 F. App'x 732, 734 (9th Cir. 2011) (". . . we must presume that juries will follow the district court's limiting instructions.").

As for the remaining Rule 403 concerns, the court will not allow the government to present evidence of armor piercing and tracer ammunition in a confusing or misleading manner. The court will also prevent undue delay, cumulative evidence, and waste in time by requiring the government

1    to efficiently present its case.  Further, Haig will be able to raise objections, which the court will
2    consider in determining how to proceed with a fair trial.

        *b.  Smith's expert testimony*

Haig requests that the court exclude Smith's expert testimony on forensic toolmark evidence because Smith's methods have not achieved general acceptance in the relevant community. (ECF No. 80).  Alternatively, Haig requests that the court conduct a *Daubert* hearing to determine whether Smith's expert testimony is admissible. *Id*

Federal Rule of Evidence 702 provides that a witness qualified as an expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

In determining whether an expert's testimony is reliable under Rule 702, courts consider "(a) whether the theory or technique can and has been tested; (b) whether the theory or technique has been subjected to peer review and publication; (c) the known or potential rate of error for the technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific community. *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 945 (9th Cir. 2009) (citing *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).  District judges retain "broad latitude to determine" whether these factors reasonably measure the reliability of an expert witness's testimony. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

The court first notes that the Ninth Circuit does not require district courts to conduct *Daubert* hearings when evaluating the reliability of an expert. *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019).  Rather, courts retain discretion in the procedure they use to determine whether expert testimony is admissible under Rule 702. *See Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009).  Because Haig raises issues in his motion *in limine* that have been well litigated in similar cases, the court need not go beyond the materials in

- 8 -

the record to fully address Haig's arguments. Therefore, the court adjudicates Haig's motion without conducting a *Daubert* hearing.

Smith is a physician scientist with a master's degree in forensic science and approximately twenty years of experience in the field of firearms/toolmarks identification. (ECF No. 25-1). The government intends to use Smith at trial to provide testimony regarding the process of reloading ammunition, the identification of ammunition, the identification of toolmarks on ammunition, and his opinions/conclusions on the ammunition in this case. (ECF No. 50).

Smith's testimony is relevant to determine whether Haig manufactured the ammunition that Paddock used. Further, Haig's contention that Smith's methods are unreliable and not generally accepted in the relevant community is incorrect. The Ninth Circuit has consistently affirmed the admission of toolmark identification evidence and expert testimony of that evidence. *See, e.g.*, *United States v. Cazares*, 788 F.3d 956, 988 (9th Cir. 2015); *see also*, *e.g.*, *United States v. Felix*, 727 Fed. App'x 921, 924–925 (9th Cir. 2018). Smith's anticipated testimony falls well-within the type of evidence which the Ninth Circuit has previously considered. Thus, Smith's methods are reliable and his testimony is admissible.

Haig also notes that the Ninth Circuit held in *Cazares* that "scientific certainty" is an improper characterization of expert conclusions based on toolmark identification methods. (ECF No. 80). The government concedes this point and represents that Smith will not provide such testimony as it would violate the Depart of Justice's uniform standards for testimonies and reports. (ECF Nos. 82, 82-3). Nevertheless, the court will exercise caution and exclude Smith from testifying that he reached his conclusions with scientific certainty or other similar standards of reasonable certainty.

**VI.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the government's motion *in limine* (ECF No. 52) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the government's motion *in limine* (ECF No. 53) be, and the same hereby is, GRANTED.

**James C. Mahan**
**U.S. District Judge**

- 9 -

IT IS FURTHER ORDERED that Haig's motion *in limine* (ECF No. 64) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Haig's motion *in limine* (ECF No. 80) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

DATED August 6, 2019.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**